## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SEAN JONES, BRODRIELLE JONES, KENDALL | * | CIVIL ACTION NO. |
| JONES ON BEHALF OF D.B., AND LAVERNE | * | |
| PHILLIPS ON BEHALF OF D.G. | * | |
| INDIVIDUALLY AND ON BEHALF | * | |
| OF THE DECEASED, KENTRELL HURST | * | |
| | * | |
| VERSUS | * | |
| | * | |
| MARLIN N. GUSMAN, IN HIS OFFICIAL | * | |
| CAPACITY, AS ORLEANS PARISH SHERIFF; | * | JUDGE: |
| CORRECT CARE SOLUTIONS, L. L. C.; | * | |
| ROGELLO PEREZ, RN; DAVID OATES, RN; | * | |
| PAMMALIER WALKER NP; LISA | * | |
| PITTMAN, LPN; DELORES THOMPSON, LPN; | * | |
| M. PARKER; C. BIBBENS; B. MONTGOMERY; | * | |
| CMA LAWSON; ORLEANS PARISH SHERIFF'S | * | |
| OFFICE DEPUTIES JOHN/JANE DOES 1-5; | * | |
| MEDICAL STAFF MEMEBERS JOHN/JANE | * | MAG: |
| DOES 6-10 | * | |

*******************************************************************************

## COMPLAINT

This is case about yet another tragic, unnecessary, and preventable death at the Orleans Parish Prison.  On May 25, 2018 Kentrell Hurst was arrested and taken into the custody by the Orleans Parish Sheriff's Office.  As is the case with a growing number of Americans, Ms. Hurst suffered from an addiction to opioids.  While in the Intake Processing Center, Ms. Hurst started to show signs of severe withdrawal. Ms. Hurst reported her worsening symptoms to medical staff at the Intake Processing Center, but they failed to provide her the care she needed.  Ms. Hurst's condition constituted a full-blown medical emergency requiring immediate medical intervention. Defendants, herein, failed to provide the necessary reasonable and mandatory medial monitoring and treatment, resulting in her death at the prison on May 27, 2019. Accordingly, the defendants herein are liable for her death.

## JURISDICTION AND VENUE

1.

This action is brought pursuant to 42 U.S.C. § 1983, based on the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1988.  Jurisdiction is founded on 28 U.S.C. § 1331and 1343, and the aforementioned statutory and constitutional provisions. Plaintiffs also invoke supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. § 1367.

2.

Venue is proper in this Court because the causes of action occurred within the Eastern District of Louisiana and all Defendants worked and/or reside within this district.

## PARTIES

3.

(PLAINTIFFS)

**Named Plaintiffs herein are:**

a. **SEAN JONES** is an adult citizen of the United States and is domiciled in the Eastern District of Louisiana.  He brings this claim individually and on behalf of his mother the decedent, Kentrell Hurst including all survival and wrongful death actions.

b. **BRODRIELLE JONES** is an adult citizen of the United States and is domiciled in the Eastern District of Louisiana.  She brings this claim individually and on behalf of her mother the decedent, Kentrell Hurst including all survival and wrongful death actions.

c. **KENDALL JONES on behalf of D.B.**, a minor citizen of the United States and is domiciled in the Eastern District of Louisiana.  He brings this claim individually and on

behalf of his mother the decedent, Kentrell Hurst including all survival and wrongful death actions.

d. **LAVERNE PHILLIPS on behalf of D.G.,** a minor of the United States and is domiciled in the Eastern District of Louisiana.  He brings this claim individually and on behalf of his mother the decedent, Kentrell Hurst including all survival and wrongful death actions.

## (DEFENDANTS)

**Named Defendants herein are:**

a) **MARLIN N. GUSMAN,** in his individual and official capacity as Sheriff of Orleans Parish, is an adult citizen of the United States and is domiciled in the Eastern District of Louisiana.  At all times herein, he was the Sheriff of Orleans Parish and, as such, was responsible for the hiring, training, supervision, discipline, and control of the deputies under his command, as well as medical personnel.  He was responsible for all actions of the Orleans Parish Sheriff's Office and its correctional facilities' staff.  He was also responsible for the supervision, administration, policies, practices, customs, and operation of the Orleans Parish Sheriff's Office and its correctional facilities.  He was and is a final policy maker, and he is liable both directly and vicariously for the actions complained of herein.

b) **CORRECT CARE SOLUTIONS, L.L.C.,** was at all relevant times the entity with which the Orleans Parish Sheriff's Office contracted to provide medical and mental health services to prisoners at the Orleans Parish Prison, including the Intake Processing Center.  Correct Care Solutions, LLC. was responsible for providing all staffing, training, policies, and procedures for all medical and mental health personnel at Orleans Parish Prison.

c)  **ROGELIO PEREZ, R.N.,** in his individual and official capacity as a registered nurse with Correct Care Solutions, LLC, is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **PEREZ** was assigned as a nurse at the Intake Processing Center where Ms. Hurst died. At all pertinent times, he was responsible for providing care to detainees like Ms. Hurst and for supervising and overseeing the job performance of other medical personnel operating at the Intake Processing Center.

d)  **DAVID OATES, R.N.,** in his individual and official capacity as a registered nurse with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **OATES** was assigned as a nurse at the Intake Processing Center where Ms. Hurst died. At all pertinent times, he was responsible for providing care to detainees like Ms. Hurst and for supervising and overseeing the job performance of other medical personnel operating at the Intake Processing Center.

e)  **PAMMALIER WALKER,** in her individual and official capacity as a Nurse Practitioner with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **WALKER** was assigned as a Nurse Practitioner at the Intake Processing Center where Ms. Hurst died.  At all pertinent times, she was responsible for providing care to detainees like Ms. Hurst and for supervising and overseeing the job performance of other medical personnel operating at the Intake Processing Center.

f)  **LISA PITTMAN,** in her individual and official capacity as an LPN with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and

belief, domiciled in the Eastern District of Louisiana.  Defendant **PITTMA**N was working as an LPN at the Intake Processing Center on the day when Ms. Hurst died. She was responsible for providing her appropriate care.

g) **DOLORES E. THOMPSON,** in her individual and official capacity as an LPN with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **THOMPSON** was working as an LPN at the Intake Processing Center on the day when Ms. Hurst died.  She was responsible for providing her appropriate care.

h) **M. PARKER,** in her individual and official capacity as a health care professional with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **PARKER** was working as a health care professional at the Intake Processing Center on the day when Ms. Hurst died. She was responsible for providing her appropriate care.

i) **C. BIBBENS,** in her individual and official capacity as a health care professional with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **BIBBENS** was working as a health care professional at the Intake Processing Center on the day when Ms. Hurst died.  She was responsible for providing her appropriate care.

j) **B. MONTGOMERY,** in her individual and official capacity as a health care professional with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of

Louisiana.  Defendant **MONTGOMERY** was working as a health care professional at the Intake Processing Center on the day when Ms. Hurst died. She was responsible for providing her appropriate care.

k)  **CMA LAWSON,** in her individual and official capacity as a health care professional with Correct Care Solutions, LLC., is an adult citizen of the State of Louisiana, and on information and belief, domiciled in the Eastern District of Louisiana.  Defendant **LAWSON** was working as a Certified Medical Assistant at the Intake Processing Center on the day when Ms. Hurst died.   She was responsible for providing her appropriate care.

l)  **ORLEANS PARISH SHERIFF'S OFFICE DEPUTIES JOHN/JANE DOES 1-5,** in their individual and official capacities as Orleans Parish Sheriff's Deputies, are adult citizens of the State of Louisiana and, on information and belief, are domiciled in the Eastern District of Louisiana.  At all pertinent times, defendants, **JOHN/JANE DOES 1-5** were employed by the Orleans Parish Sheriff's Office as correctional officers assigned to the Intake Processing Center.   On information and belief, defendants, **JOHN/JANE DOES 1-5** failed to monitor Ms. Hurst and/or to provide immediate referral to medical personnel as his condition worsened.

m)  **MEDICAL STAFF MEMBERS JOHN/JANE DOES 6-10,** in their individual and official capacities as employees of the Correct Care Solutions, LLC., are adult citizens of the State of Louisiana and, on information and belief, are domiciled in the Eastern District of Louisiana.  At all pertinent times, defendants, **JOHN/JANE DOES 6-10** were employed by Correct Care Solutions as medical professionals assigned to the

Intake Processing Center.   On information and belief, defendants, **JOHN/JANE DOES 6-10** failed to monitor Ms. Hurst, who died as a result of their negligence.

## FACTUAL ALLEGATIONS

4.

Contrary to the **CORRECT CARE SOLUTIONS, L.L.C.** Clinical Opiate Withdrawal Symptom ("COWS") protocol, defendants, including all R.N. staff, failed to monitor Ms. Hurst's vital signs and physical symptoms as required.   On information and belief, Ms. Hurst continued to complain to these defendants and others of severe abdominal pain, nausea, and vomiting at various points during the night.   Such symptoms were signs that Ms. Hurst was suffering a healthcare emergency warranting immediate transfer to a hospital, but they were ignored and blatantly disregarded by these defendants.

5.

On information and belief, on May 27.2018, defendants **PEREZ, PITTMAN, PARKER, BIBBENS, MONTGOMERY,** and **LAWSON** (sometimes referred to herein as the **"Day Shift Defendants"**) started their shift at the Intake Processing Center.   They assumed care of Ms. Hurst at this time.

6.

During all relevant times, Ms. Hurst continued to complain of severe abdominal pain and nausea to defendants herein, the day and night R.N. staff, including but not limited to **PEREZ, PITTMAN, PARKER, BIBBENS, MONTGOMERY,** and **LAWSON,** and prison personnel. Despite her continued reports of severe pain, these defendants failed to follow the COWS protocol for Ms. Hurst or to route her to the hospital.   These defendants failed to properly check and monitor her vitals at any point in time.   A check of Ms. Hurst's vitals, as was required by COWS protocol

and warranted by her reported symptoms, would have shown that Ms. Hurst was in a medical crisis that required immediate hospitalization.  However, these defendants ignored their duties to Ms. Hurst, as well as her repeated pleas for help.

7.

On information and belief, Ms. Hurst complained to one or more deputies **JOHN/ JANE DOES 1-5** and one or more medical defendants **JOHN/JANE DOES 6-10** about his deteriorating condition on May 26-27, 2018.  However, these deputies and medical defendants deliberately disregarded her complaints and failed to notify appropriate staff or take other action.

8.

The failures culminating in Kentrell Hurst's death – specifically, a failure to provide adequate health care, is a long-term problem at the Orleans Parish Prison.  There is a longstanding problem and practice of both guards and medical staff ignoring and disregarding the serious medical conditions of inmates.  All defendants in this matter were aware of the problems with healthcare at the Orleans Parish Prison but failed to address them with adequate reforms and more importantly mandatory protocols were not followed.

9.

There is a well-documented pattern and practice at Orleans Parish Prison of inadequate medical staffing and failing to monitor sick inmates, including those suffering from withdrawal symptoms thereby permitting, and in fact, creating unconstitutional risks to inmate safety.  There is further a pattern and practice of failing to provide constitutionally adequate healthcare to inmates housed in the Orleans Parish Prison facilities.  There is also a pattern and practice of failing to adhere to policies and procedures, as well as, a pattern and practice of failing to monitor, supervise,

and discipline for Orleans Parish Sheriff's deputies' and medical staff's failure to follow policies and procedures.

10.

The defendants, particularly defendants, **GUSMAN** and **CORRECT CARE SOLUTIONS, L.L.C.**, knew, must have known, or should have known of these unconstitutional patterns and practices.  There are numerous tragic examples of inmates under these defendants' care, custody, and control being subjected to unconstitutional risks of harm, which frequently results in serious injury to the inmate or even death.

11.

At the time of the detention of Kentrell Hurst by the Orleans Parish Sheriff's Office and the Orleans Parish Prison, the defendants knew, must have known, or should have known of serious deficiencies in the policies, practices and procedures at the prison related to medical screening and the care and observation of prisoners.  Defendants were also aware of the inadequate staffing and inadequate training and supervision of medical and correctional staff regarding medical problems of inmates.  Despite their knowledge of these serious deficiencies, the defendants failed to make necessary changes to policies, procedures, training or staffing or to intervene to see that Kentrell Hurst and others in their custody were provided adequate treatment for serious health needs.

12.

On information and belief, defendants herein have been involved in other incidents involving inadequate supervision and treatment for prisoners with serious medical needs which resulted in serious harm, injury, suffering and/or death to inmates in their care.  Yet few of these defendants and/or other Orleans Parish Sheriff's Office/Correct Care Solutions, LLC. staff who were similarly derelict in their duties were appropriately disciplined or held accountable for their

actions or omissions.  In addition, those responsible for training and supervising Orleans Parish

Sheriff's Office/Correct Care Solutions, LLC.'s staff have failed in their own responsibilities to

provide adequate care to prisoners and have not been subject to disciplinary action or

accountability for failing in their supervisory and/or training responsibilities.

13.

There have been numerous reports prior to Kentrell Hurst's incarceration, which placed all

defendants on notice regarding the unconstitutional conditions and failures at the prison.

14.

On April 23, 2012 the Department of Justice ("DOJ") issued a findings letter based on an

ongoing investigation of the Orleans Parish Prison.  This letter documented serious constitutional

violations, policies and practices that violated generally accepted standards of care for custodial

institutions.

15.

In its April 23, 2012 letter the Department of Justice found that "the Orleans Parish Prison

is deliberately indifferent to prisoners with serious medical and mental health needs…. Prisoners

with physical illness, either chronic or emergent, experience unreasonable barriers in accessing

care.  As a result, prisoners suffer during their incarceration and thus, are returned to the

community, in far too many cases, sicker and less equipped to avoid future involvement with the

criminal justice system than when they entered."

16.

In 2012, a class-action complaint asserting unconstitutional conditions at Orleans Parish

Sheriff's Office and their facilities was filed against defendant **GUSMAN**.  The filings and

proceedings during that litigation include multiple reports by security and medical experts, a

consent judgment signed by Defendant **GUSMAN**, testimony at a three-day fairness hearing, and, finally, Judge Lance Africk's lengthy and detailed order approving the consent judgment.  *See Jones, et al. v. Gusman, et al.*, EDLA #12-cv-859.

17.

Judge Africk signed his order approving the consent judgment governing the operations of the Orleans Parish Sheriff's and its facilities on June 6, 2013, over four years before Ms. Hurst's death.  The judgment included numerous findings and requirements regarding medical care at the Orleans Parish Prison.  The requirements set forth in the order were designed to bring Orleans Parish Prison facilities into compliance with the U.S. Constitution.

18.

Judge Africk's order outlined several "stark, sometimes shocking, deficiencies in OPP's medical and mental health care system."  The judge discussed his findings related to health care at the Orleans Parish Prison by concluding that "[t]he evidences presented shows that a lack of treatment altogether, rather than inadequate treatment, contributes to severe deficiencies in medical and mental health care at OPP."  He noted that "'[a] prison that deprives inmates of basic sustenance, including adequate medical care, incompatible with the concept of human dignity and has no place in civilized society.'"  The judge specifically found that "[t]he consent judgment provisions on mental and medical health care are necessary to remedy the violation of federal rights, and they are the least intrusive means of doing so."

19.

Judge Africk noted constitutional deficiencies in Orleans Parish Sheriff's Office/Orleans Parish Prison's treatment of detoxifying inmate, including that Orleans Parish Sheriff's Office/Orleans Parish Prison failed to monitor them consistently and failed to respond adequately

to life threatening symptoms.  Judge Africk also made findings related to the "dramatically insufficient staffing" of mental and medical health care providers.  The judge noted that the ratio of nurses to prisoners makes it "impossible for the nurses to adequately evaluate and chart patients, administer medications, respond to emergencies, provide suicide monitoring, gather sick call information, and provide basic nursing services."

20.

Defendants, **GUSMAN** and **CORRECT CARE SOLUTIONS, L.L.C.** knew, must have known, or should have known of these deficient conditions, including inadequate medical care, as described in the previous reports and litigation.  Despite the above history noted, these conditions persist to this day at the Orleans Parish prison facilities; however, these defendants have failed to make appropriate and necessary changes in policies, procedures, staffing, training, and/or facilities to protect inmates from harm, including harm from a failure to provide adequate medical care. These defendants also failed to ensure that appropriate supervision and disciplinary action was taken in situations where prisoners suffered or died as the result of inadequate or inappropriate care or treatment by the Orleans Parish Sheriff's Office staff.

21.

Defendants knew, must have known, or should have known that the standard of care for those experiencing health crises could not be met by the policies, procedures, or staffing of the Orleans Parish Prison and Correct Care Solutions, LLC. but failed to take appropriate steps to see that Kentrell Hurst or other inmates in similar situations received appropriate and adequate care in accordance with community standards of care.

22.

Furthermore, despite their knowledge of these conditions the defendants ratified or condoned such acts or omissions by the Orleans Parish Sheriff's Office  and Correct Care Solutions, LLC.'s staff which caused serious harm, suffering, and death to prisoners at the Orleans Parish Prison  and maintained a custom and practice whereby there was no accountability for Orleans Parish Sheriff's Office  and Correct Care Solutions, LLC.'s staff who mistreated prisoners or who violated policies, procedures or standards of care for prisoners.  The defendants' actions and failures to act were a direct and motivating force that caused the death of Kentrell Hurst on May 27, 2018.

23.

Defendants, **GUSMAN**, as Sheriff of Orleans Parish and **MAYNARD**, as the Compliance Director of Orleans Parish Prison, were ultimately responsible for hiring, training, supervising, disciplining, and/or retaining all employees at the Orleans Parish Prison.  They were responsible for all policies and procedures at the Intake Processing Center, and they were responsible for every other defendant named herein.

24.

Defendant **CORRECT CARE SOLUTIONS, L.L.C.** is ultimately responsible for hiring, training, supervising, disciplining, and/or retaining the medical defendants.  It is further responsible for policies, procedures, and customs of the medical personnel of the Orleans Parish Prison.  Further, **CORRECT CARE SOLUTIONS, L.L.C.** had the responsibility and duty for the diagnosis, oversight, review, monitoring, supervision, and evaluation of Kentrell Hurst's medical needs, the delivery of care for her, and the policies and procedures governing her treatment.  **CORRECT CARE SOLUTIONS, L.L.C.** actions with respect to the care of Kentrell

Hurst exhibited deliberate indifference to Ms. Hurst 'serious medical needs.  Furthermore, and in the alternative, **CORRECT CARE SOLUTIONS, L.L.C.** are of fell below the applicable standard of care and was negligent.  **CORRECT CARE SOLUTIONS, L.L.C.** is also liable under the doctrine of respondent superior for both the conditional violations and the state law torts of its employees, as described herein.

25.

Defendants, **OATES, WALKER, THOMPSON, PEREZ, PITTMAN, PARKER, BIBBENS, MONTGOMERY,** and **LAWSON** were responsible for providing adequate and appropriate medical care of Kentrell Hurst, including routing her to the hospital in case of a medical emergency.  They were further responsible for the documentation and paperwork necessary for continuity of care of Kentrell Hurst, including evaluation and monitoring of her withdrawal symptoms under the COWS protocol.  These defendants failed in their responsibility to ensure that Kentrell Hurst was in a safe, appropriate environment and that she was receiving care for her medical needs.  These defendants' actions with respect to the care of Kentrell Hurst exhibited deliberate indifference to Ms. Hurst's serious medical needs.  Furthermore, and in the alternative, these defendants' care of Kentrell Hurst was grossly negligent and fell below the applicable standard of care.

26.

Defendant, Orleans Parish Sheriff's deputies, **JANE** and **JOHN DOES #1-5**, are persons who had the responsibility and duty to monitor and act on Kentrell Hurst's behalf when she reported to them with such serious medical issues.   Thus, exhibiting deliberate indifference and negligence, each of these defendants failed in their duty to her.

27.

Defendant, **CORRECT CARE SOLUTIONS, L.L.C.'s** employees, **JANE** and **JOHN DOES #6-10,** are persons who had the responsibility and duty to monitor and act on Kentrell Hurst's behalf when she reported to them with such serious medical issues.   Thus, exhibiting deliberate indifference and negligence, each of these defendants failed in their duty to her.

28.

The failures of the above described defendants to comply with their duties and their breach of the applicable standards of care with respect to Kentrell Hurst while she was in their care ultimately resulted in her suffering and death on May 27, 2018.

29.

Policy-making defendants, including **GUSMAN** and **CORRECT CARE SOLUTIONS, L.L.C.** knew that the policies, practices, and procedures with respect to healthcare at the Orleans Parish Prison were inadequate and posed a danger of serious bodily harm to detainees at the Orleans Parish Prison. However, they took no actions to correct these policies, practices, and procedures.   Their inactions with respect to these policies, practices, and procedures were motivated by deliberate indifference and/or culpable negligence to the serious risks to detainees.

30.

Kentrell Hurst's risks of serious harm and/or death was known, obvious, and must have been known, and/or should have been known to all defendants named herein.  All defendants failed to take appropriate actions and necessary measures to protect and preserve Kentrell Hurst's life and safety, as set forth herein. All defendants' actions, as described herein, were taken with deliberate indifference to Kentrell Hurst's risk of serious bodily harm and/or failed to meet the applicable standard of care and were reckless and/or negligent.

31.

The defendants are responsible jointly and *in solido* for the death of Kentrell Hurst.

32.

The decedent, Kentrell Hurst, is the biological mother of Plaintiffs herein, Sean Jones, Brodrielle Jones, D.B., and D.G., who bring these survival and wrongful death claims individually and on behalf of the decedent, Kentrell Hurst.

## **SURVIVAL ACTION**

33.

Plaintiffs incorporate and reiterate by reference herein all preceding paragraphs as fully set forth above.

34.

Plaintiffs herein assert any and all survival claims associated with the negligence and conduct of the Defendants as more fully set forth above and below in each cause of action.

35.

Pursuant to Louisiana Civil Code art. 2315.1, if a person who has been injured by offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense shall survive for a period of one year from the death of the decedent in favor of his surviving child or children.

36.

Kentrell Hurst died as a result of the Defendants' negligence and wrongful conduct.

37.

Kentrell Hurst would have been entitled to bring this action against Defendants had she survived.

38.

Decedent's right of action for the wrongful conduct against the Defendants survive in favor of her heirs, legal representative and the Estate of the deceased in accordance with Louisiana Civil Code Article 2315.1.

39.

Defendants are liable to Plaintiffs for the loss of Mrs. Hurst's life, pain and suffering, and the violation of her civil rights as more fully set forth herein.

40.

Plaintiffs herein seek compensation as more fully set forth in "Damages" section of this Complaint.

**WRONGFUL DEATH**

41.

Plaintiffs incorporate and reiterate by reference herein all preceding paragraphs as fully set forth above.

42.

Plaintiffs herein assert any and all wrongful death claims associated with the negligence and conduct of the Defendants as more fully set forth above and below in each cause of action.

43.

Pursuant to Louisiana Civil Code art. 2315.2, if a person dies due to the fault of another, suit may be brought by surviving children to recover damages which they sustained as result of the death of their parent, and Sean Jones, Brodrielle Jones, D.B., and D.G. are the surviving children of the decedent, Kentrell Hurst.

44.

The Defendants' conduct, acts and omissions were the proximate cause of Ms. Hurst's injuries, and emotional pain and suffering, ultimately resulting in her death.  Defendants are also responsible for the emotional distress caused by the wrongful death of Ms. Hurst.

45.

Plaintiffs herein seek compensation as more fully set forth in "Damages" section of this Complaint.

## **CAUSES OF ACTION**

46.

Plaintiffs repeat and re-challenge every allegation of this Complaint.

47.

The defendants, acting both individually and collectively, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Kentrell Hurst of her constitutional rights, did deprive her of said rights, specifically, the right of Kentrell Hurst to a reasonable safe and secure place of detention, reasonable and adequate medical care, the right  to be free from cruel and unusual punishment, and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments and Article IV (Privileges and Immunities Clause) of the United States Constitution and 42 U.S.C. § 1983.

48.

At all times pertinent herein, the defendants, acting individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the decedent, Kentrell Hurst.

49.

The defendants' actions were reckless, willful, wanton, and/or malicious in nature.

50.

Defendants, individually and collectively, had the duty and ability to intervene to prevent the violation of Kentrell Hurst's rights, as described herein, but failed to do so.

51.

Plaintiffs further allege that such acts as alleged herein were the proximate cause and cause in fact of the injuries sustained, as well as, the death of Kentrell Hurst and the damages incurred thereby.

52.

Defendant, **Correct Care Solutions, LLC.** is liable directly and under the doctrine of respondent superior for the constitutional torts of its employees committed in the course and scope of their employment.

53.

Defendants, **GUSMAN** and **CORRECT CARE SOLUTIONS, L.L.C**., acting individually and collectively, established, condoned, ratified, and encourage customs, policies, patterns, and practices that directly and proximately caused the deprivation of the civil and constitutional rights of the decedent, as alleged herein, and the damages and injuries described herein, in Eighth and Fourteenth Amendments and Article IV (Privileges and Immunities Clause) of the United States Constitution and 42 U.S.C. § 1983.  They did so with deliberate indifference to the rights of the detainees at the Orleans Parish Prison facilities.

54.

In addition to the injuries sustained by the plaintiffs herein, the deliberate indifference of

defendants, **GUSMAN** and **CORRECT CARE SOLUTIONS, L.L.C**, in their official capacities as Sheriff of Orleans Parish and the medical provider for the Orleans Parish Prison, to the serious medical needs of detainees under their custody and control has resulted in numerous other instances of detainees suffering serious, and oftentimes fatal, injuries and illnesses.

55.

At all times pertinent herein, the defendants acted unreasonably and with deliberate indifference and disregard for the constitutional and civil rights to life and safety of the decedent, Kentrell Hurst.  The actions of the defendants were malicious, willful, wanton, and reckless.

56.

Plaintiffs further allege that such acts and omissions as alleged herein were the proximate cause and cause in fact of the death of Kentrell Hurst, the injuries suffered by the plaintiffs, and the damages incurred.

**CAUSE OF ACTION – LOUISIANA LAW**

57.

Plaintiffs repeat and re-allege every allegation of this Complaint.

58.

The supplemental jurisdiction of the Court is invoked for all claims under state law.

59.

At all times described herein, the defendants, individually and collectively, acted negligently, with negligence, gross negligence, and or intentionally in denying reasonable and necessary medical care to Kentrell Hurst and failing to properly monitor her, thereby inflicting physical injury and severe emotional, mental, and physical pain and suffering upon her, in violation of Louisiana Constitutional and Statutory law.

60.

The actions and inactions of the defendants cause the wrongful death of Kentrell Hurst.  At all pertinent times herein, the defendant employees of **GUSMAN**, in their official capacity, and the defendant employees of **CORRECT CARE SOLUTIONS, LLC.** were acting in the course and scope of their employment.  The defendant sheriff, **GUSMAN**, in his official capacity, and/or **CORRECT CARE SOLUTIONS, LLC.**  are vicariously liable for the injuries and damages incurred herein as a result of their actions.

61.

All defendants named herein are liable for the wrongs complained of herein by virtue of encouraging, aiding, abetting, counseling, ratifying, and condoning the commission of the afore-described acts, by their failure to properly administer, organize, and staff the medical and correctional program and for the failure to properly screen, hire, train, and discipline persons under their supervision and control whose acts and omissions contributed to the death of Kentrell Hurst.

62.

The defendants are liable, individually and *in solido*, for their actions as alleged herein.

63.

Plaintiffs further allege that the above-described actions and omissions were the proximate cause and cause in fact of the injuries sustained herein.

## DAMAGES (ALL DEFENDANTS)

64.

As a result of the actions and/or omissions of the defendants being the proximate cause of the following injuries suffered by Plaintiff and/or Decedent and as such Plaintiff requests damages for each and every injury outlined herein pursuant to Louisiana Civil Code art. 2315.1 and 2315.2:

a.  Ms. Hurst's pain and suffering prior to her death;

b.  Ms. Hurst's mental anguish and anxiety prior to her death;

c.  Ms. Hurst's funeral expenses and other final expenses;

d.  Petitioner's loss of love, affection, society and services;

e.  Petitioner's mental anguish and anxiety;

f.  Petitioner's loss of support;

g.  Petitioner's medical expenses;

h.  Loss of enjoyment of life;

i.  Loss of income;

j.  Loss of support;

k.  Loss of comfort, financial assistance, protection, affection and care;

l.  Actual damages;

m.  Loss of quality of life;

n.  Loss of future earnings and contributions to Plaintiff;

o.  Exemplary and punitive damages as well as costs of court;

p.  Pursuant to 42 U.S.C. § 1988, and other applicable laws, Plaintiff should be awarded costs, reasonable attorney's fees for the preparation and trial of this course of action, and for its appeal, if required;

q.  Prejudgment and post judgment interest;

r.  Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court; and

s.  Any and all other damages which may or will be proven at the trial of this matter.

65.

Additionally, Kentrell Hurst (decedent) suffered conscious and severe physical, mental, and emotional distress, pain, suffering prior to her death and lost her life for which the children of Kentrell Hurst, plaintiffs herein, are entitled to recover.

66.

Additionally, the children of Kentrell Hurst, plaintiffs herein, suffered emotional pain and suffering; past, present and future; loss of support; and the loss of love, affection, and companionship of their mother, Kentrell Hurst.

## **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiffs pray that after the proceedings are had there be judgment rendered herein in plaintiffs' favor and against all defendants, individually and *in solido*, as follows:

1. Compensatory and punitive damages as prayed for herein;

2. Reasonable attorneys' fees, as provided for in 42 U.S.C. § 1988 and all costs of these proceedings and legal interest;

3. All other relief as appears past and proper to this Honorable Court.

Respectfully submitted,

**LAW OFFICES OF COREY M. OUBRE, L.L.C.**

**COREY M. OUBRE #28709**
732 Paul Maillard Road
Luling, Louisiana 70070
Telephone: (985) 785-6620
Facsimile: (985) 785-6628
Email: cmoubre@oubrelaw.com
Counsel for Plaintiffs

AND

**KETRY LAW FIRM, L.L.C.**

**GEORGE R. KETRY, JR. #36976**
732 Paul Maillard Road
Luling, Louisiana 70070
Telephone: (985) 785-6620
Facsimile: (985) 785-6628
Email: ketrylawfirm@gmail.com
Counsel for Plaintiffs